FEDERAL TRADE COMMISSION

v.

BRIGADIER INDUSTRIES CORP.,
et al., Appellants.

FEDERAL TRADE COMMISSION

v.

BRIGADIER INDUSTRIES CORP., Chief
Industries, Inc., et al., Appellants.

Nos. 78–1875, 78–1878.

United States Court of Appeals,
District of Columbia Circuit.

Argued 6 Sept. 1979.

Decided 19 Dec. 1979.

Miles W. Kirkpatrick, Washington, D. C., for appellant Brigadier Industries Corp., et al.

James A. Brodsky, Washington, D. C., for appellant Chief Industries, Inc.

Clarence R. Laing, Jr., Atty., F. T. C., Washington, D. C., a member of the bar of the Supreme Court of New York, pro hac vice, with whom Michael M. Sohn, Gen. Counsel, Gerald P. Norton, Deputy Gen. Counsel, and Jerold D. Cummins, Deputy Asst. Gen. Counsel, F. T. C., Washington, D. C., were on the brief, for F. T. C.

Katherine A. Meyer, Washington, D. C., with whom Harvey Schweitzer, Washington, D. C., was on the brief for appellee Center for Auto Safety.

Kennard R. Weaver, Elkhart, Ind., entered an appearance for appellant, Shult Homes Corp.

Opinion for the Court filed by WILKEY, Circuit Judge.

WILKEY, Circuit Judge:

This is an appeal from an order of the district court enforcing ten subpoenas duces tecum served on appellants by the Federal Trade Commission (Commission) during the course of a rulemaking proceeding. Drawing on its newly granted authority under the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act (Magnuson-Moss Act),[1] the Commission initiated proceedings for the promulgation of a trade regulation rule governing sales and warranty services of the mobile home industry on 29 May 1975.[2] Toward the close of the public hearings held in connection with the proceeding, appellee-intervenor Center for Auto Safety (Center) filed a motion with the presiding officer to compel the production of service records from mobile home manufacturers who testified at the hearings. Section 1.13(d)(6) of the Commission's Rules of Practice empowers officials presiding over Magnuson-Moss rulemaking to issue subpoenas duces tecum on behalf of "interested persons" provided certain requirements are met.[3] After determining that the Center's request satisfied the criteria set forth in section 1.13(d)(6), the presiding officer granted the motion on 2 March 1978.[4]

Ten of the fourteen manufacturers who were served with subpoenas refused to comply, and the Commission subsequently instituted enforcement proceedings in the United States District Court for the District of Columbia. Appellants argued there that the Commission lacked statutory authority to promulgate section 1.13(d)(6), which delegated to presiding officers in the agency's rulemaking the power to issue subpoenas on behalf of third parties. In addition, appellants complained that even assuming this authority, the presiding officer administered the subpoenas in bad faith, in part because the official denied allegedly similar requests that appellants filed for production of dealer and consumer correspondence records. In an opinion rendered from the bench, Judge Hart held that the Commission had the legal authority to issue the subpoenas in question, those subpoenas were not unduly burdensome, and the denial of appellants' motion to compel production was not an issue properly before the court.[5] We affirm.

## I. BACKGROUND

In January 1975 Congress enacted the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act.[6] Section 202 of that Act amends the Federal Trade

---

1. Magnuson-Moss Warranty—Federal Trade Commission Improvement Act, Pub.L. No. 93–637, § 202, 88 Stat. 2183, 2193 (1975) (adding Federal Trade Commission Act § 18) (codified at 15 U.S.C. § 57a (1976)).

2. See 40 Fed.Reg. 23,334 (1975), Joint Appendix (J.A.) at 25.

3. 16 C.F.R. § 1.13(d)(6). For the full text of the provision, see note 13 *infra* and accompanying text.

4. *See* Ruling Granting Request of Center for Auto Safety to Issue Compulsory Process, J.A. at 26. The presiding officer granted the Center's request, with some modifications, which substantially reduced the amount of material required to be produced. Appellants filed motions to quash the subpoenas, and these were denied by the presiding officer. The presiding officer certified his ruling to the Commission, *see* 16 C.F.R. § 1.13(c)(1), (2) (1978), and the Commission upheld this ruling.

5. *See* J.A. at 447.

6. Pub.L. No. 93–637, 88 Stat. 2183 (1975).

Commission Act to add a new section 18.[7] Under this section, the Commission is authorized to promulgate rules that specifically define unfair or deceptive acts or practices (trade regulation rules) within the meaning of section 5 of the Federal Trade Commission Act.[8] To exercise this power, the Commission must follow certain procedures detailed in section 18, which are designed to afford persons potentially affected by the rules greater opportunity to participate in the agency's rulemaking.

In deciding whether to promulgate a trade regulation rule, the Commission first must publish a notice of proposed rulemaking stating the reasons for the proposed rule and permitting interested persons to submit their views.[9] The statute then directs the Commission to conduct informal hearings on the proposed rule during which interested persons may present their positions orally and through documentary submissions. If the Commission determines that disputed issues of material fact exist, interested persons may offer rebuttal submissions and conduct such cross-examination of witnesses as the Commission deems appropriate and necessary for a full and true disclosure of the material facts.[10]

On 4 April 1975 the Commission solicited comments on proposed rules intended to implement its rulemaking authority under the Magnuson-Moss Act.[11] These rules, including section 1.13, went into effect on 13 August 1975.[12] Section 1.13(d)(6) of the Commission's Rules of Practice allows "interested persons" to petition presiding officers in rulemaking proceedings for the issuance of subpoenas. To obtain a subpoena duces tecum, the party must make a general showing of the reasonableness and relevancy of the scope of the request together with a showing that the information sought is unavailable by voluntary methods and is "appropriate and required for a full and true disclosure" of the issues set for consideration.[13] Appellants do not quarrel with

7. Magnuson-Moss Warranty—Federal Trade Commission Improvement Act, Pub.L. No. 93–637, § 202, 88 Stat. 2183, 2193 (1975) (adding Federal Trade Commission Act § 18) (codified at 15 U.S.C. § 57a (1976)).

8. Federal Trade Commission Act § 5, 15 U.S.C. § 45 (1976).

9. See 15 U.S.C. § 57a(b) (1976).

10. See id. § 57a(c). Persons with the same or similar interests in a proceeding may agree upon a single representative to conduct cross-examination. See id.; 16 C.F.R. § 1.13(d)(5)(D)(ii) (1979). Appellee Center was the designated representative in the proceeding before the Commission. Once a trade regulation rule is promulgated, interested persons may file a petition for judicial review of the rule. See 15 U.S.C. § 57a(e) (1976); notes 54–55 infra and accompanying text.

11. See 40 Fed.Reg. 15,237 (1975).

12. See id. at 33,966.

13. At the time the subpoenas were issued, section 1.13(d)(6) provided:

(6) *Requests to compel the attendance of persons or the production of documents or to obtain responses to written questions.* During the course of the rulemaking proceeding the presiding officer shall entertain requests from interested persons to compel the attendance of persons or the production of docu-

ments or to obtain responses to written questions on behalf of the Commission's staff or any interested person. The presiding officer may require the payment of a fee to any person to whom such requests are directed in accordance with § 4.5 of this chapter. Requests to compel the attendance of persons or the production of documents or to obtain responses to written questions shall contain a statement showing the general relevancy of the material, information or presentation, and the reasonableness of the scope of the request, together with a showing that such material, information or presentation is not available by voluntary methods and cannot be obtained through examination, including cross-examination, of oral presentations or the presentation of rebuttal submissions, and is appropriate and required for a full and true disclosure with respect to the issues designated for consideration in accordance with paragraphs (d)(5) and (d)(6) of this section. The Commission may, on its own motion, review a determination of the presiding officer under this subsection which requires the production of confidential Commission records or the appearance of an official or employee of the Commission or another government agency.

16 C.F.R. § 1.13(d)(6) (1978).

The current version inserts the following before the last sentence:

Any motion to limit or quash a ruling to compel the attendance of persons or the pro-

the Commission's findings that the Center's request was in accord with these requirements. Instead, appellants contend that because the Magnuson-Moss Act itself makes no provision for the availability of compulsory process, the Commission was without authority to adopt section 1.13(d)(6) as part of its Rules of Practice governing Magnuson-Moss proceedings.

## II. ANALYSIS

### A. *Statutory Authority to Adopt Section 1.13*

The Commission's claimed authority to adopt section 1.13(d)(6) hinges in part on a construction of section 9 of the Federal Trade Commission Act.[14] Section 9 provides in pertinent part: "For the purposes of [the Act] . . . the Commission shall have power to require by subpoena the attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation."[15] Appellees advocate construction of the Act as an integrated whole, permitting the Commission to draw on the subpoena powers contained in section 9 to discharge it functions under section 18 of the Act.[16] Appellants contend on the other hand that the subpoena powers authorized in section 9 extend only to investigative

subpoenas issued by the Commission's staff prior to the commencement of a rulemaking proceeding and not to subpoenas issued by a presiding officer during the agency's actual rulemaking proceeding.[17] Their assertion is based on the contention that both the language and the legislative history of the Magnuson-Moss Act preclude the availability of compulsory process in section 18 proceedings. We find appellants' arguments unpersuasive.

Appellants' first contention rests on a strained interpretation of section 202(a)(2) of the Magnuson-Moss Act.[18] Section 202(a)(2) provides that the "Commission shall have no authority under this Act, other than its authority under this section, to prescribe any rule with respect to *unfair or deceptive acts or practices* in or affecting commerce."[19] Appellants apparently read this section as prohibiting the Commission from adopting additional procedural rules governing the conduct of the agency's rulemaking—a position we find to be totally without merit.

A plain reading of the section reveals that it restricts only the Commission's power to promulgate *substantive* rules and does not affect or even address the Commission's power to adopt procedural requirements for rulemaking proceedings.[20] In fact it is

duction of documents or to obtain responses to written questions shall be filed with the presiding officer within ten (10) days after service thereof, or within such other time as the presiding officer may allow. Such motion shall set forth all assertions of privilege or other factual and legal objection to the ruling, including all appropriate argument, affidavits and other supporting documentation. The presiding officer may, in his sole discretion, certify a ruling on such motion to quash to the Commission pursuant to paragraph (c)(2) of this section.
16 C.F.R. § 1.13(d)(6) (1979).

**14.** Federal Trade Commission Act § 9, 15 U.S.C. § 49 (1976).

**15.** *Id.*

**16.** *See United States v. Morton Salt Co.,* 338 U.S. 632, 649–51, 70 S.Ct. 357, 94 L.Ed. 401 (1950) (investigative powers under § 6 of the Federal Trade Commission Act applicable to § 5 proceedings under the Act).

**17.** Section 2.7 of the Commission's Rules of Practice, 16 C.F.R. § 2.7 (1979), governs subpoenas issued in investigations. During the investigation of the mobile home industry, which began in 1972 and which ultimately led to the rulemaking proceeding before the Commission, the Commission's staff utilized its section 2.7 powers and subpoenaed various records from mobile home manufacturers. *See* Brief for Appellants at 4.

**18.** Magnuson-Moss Warranty—Federal Trade Commission Improvement Act, Pub.L. No. 93–637, § 202(a)(2), 88 Stat. 2183, 2193 (1975) (adding Federal Trade Commission Act § 18(a)(2)) (codified at 15 U.S.C. § 57a(a)(2) (1976)).

**19.** *Id.*

**20.** The legislative history surrounding the section confirms our interpretation. Referring to the section in question, the House Report explains: "This rulemaking authority would be

clear from another section of the statute that the Commission does indeed have the authority to prescribe procedural rules for its rulemaking proceedings. Section 202(c)(2) provides that the "Commission may prescribe such rules and make such rulings concerning proceedings in [the informal] hearings as may tend to avoid unnecessary costs or delay."[21]

A more substantial challenge to the Commission's authority to delegate the subpoena powers in question is appellants' argument that Congress, by delineating the procedural requirements to be followed in Magnuson-Moss rulemaking and by not providing for compulsory process, intended to prevent third-party access to subpoenas in these proceedings. Although use of subpoenas is nowhere mentioned in the Magnuson-Moss Act or in the legislative history to the Act, Congress, as mentioned above, expressly granted the Commission the authority to adopt procedural rules in its informal hearings, if appropriate. Thus it is certain that Congress intended the Commission to have *some* flexibility in conducting rulemaking. The issue before the court, then, is whether the Commission's adoption of section 1.13(d)(6) was within the latitude intended the Commission by Congress. We hold that it was.

In attempting to assess congressional intent, we are bound to render an interpretation consistent with the policies and purposes of the Act. "[T]he width of administrative authority must be measured in part by the purposes for which it was conferred."[22] One of Congress's chief concerns in devising section 202 of the Magnuson-Moss Act was to afford increased opportunity for public participation in rulemaking while still enabling the Commission to pursue its statutory directive efficiently and effectively.[23] As the House Report explains: "Our mission was to develop a provision which would allow interested persons an opportunity to be heard in a meaningful and constructive way on proposed rules while granting to the Commission the latitude to avoid unnecessary costs or delay in its proceedings."[24]

As a result the Magnuson-Moss Act bestows unusually broad participatory rights in trade regulation rulemaking to interested persons, tailored to the Commission's need to conduct its proceedings efficiently. For example, if the Commission determines that there are disputed issues of material fact, interested persons are entitled to cross-examine witnesses and offer rebuttal submissions at the informal hearings.[25] Coordinat-

---

the exclusive substantive rulemaking authority of the FTC under the Federal Trade Commission Act. Thus, the Commission would not have rulemaking authority with respect to unfair methods of competition to the extent they are not unfair for deceptive acts or practices." H.R.Rep.No.1107, 93d Cong., 2d Sess. 46, *reprinted in* [1974] U.S.Code Cong. & Admin. News, pp. 7702, 7727. *See* S.Rep.No.1408, 93d Cong., 2d Sess. 31 (conference report on S. 356), *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 7755–7763–64.

**21.** Magnuson-Moss Warranty—Federal Trade Commission Improvement Act, Pub.L. No. 93–637, § 202(c)(2), 88 Stat. 2183, 2194 (1975) (adding Federal Trade Commission Act § 18(c)(2)) (codified at 15 U.S.C. § 57a(c)(2) (1976)).

**22.** *Permian Basin Area Rate Cases,* 390 U.S. 747, 776, 88 S.Ct. 1344, 1364, 20 L.Ed.2d 312 (1968), *quoted in National Petroleum Refiners Ass'n v. FTC,* 157 U.S.App.D.C. 83, 100, 482

F.2d 672, 689 (D.C.Cir.1973), *cert. denied,* 415 U.S. 951, 94 S.Ct. 1475, 39 L.Ed.2d 567 (1974).

**23.** *Cf.* 5 U.S.C. § 553 (1976) (informal notice and comment procedures in agency rulemaking).

**24.** H.R.Rep.No.1107, 93d Cong., 2d Sess. 81, 86 (separate views on H.R. 7917), *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 7747, 7752. Although the Senate bill (S. 356) was passed in lieu of the House bill (H.R. 7917), much of the language of the House bill was substituted for the language of S. 356.

**25.** *See* Magnuson-Moss Warranty—Federal Trade Commission Improvement Act, Pub.L. No. 93–637, § 202(c)(1)(B), 88 Stat. 2183, 2194 (1975) (adding Federal Trade Commission Act § 18(c)(1)(B)) (codified at 15 U.S.C. § 57a(c)(1)(B) (1976)); note 10 *supra* and accompanying text.

ing the two concerns of procedural efficiency and procedural fairness is the overarching statutory goal of attaining a "full and true disclosure" of disputed facts.[26]

Section 1.13(d)(6) is entirely consistent with that statutory scheme. While the provision somewhat enlarges the initiative powers of interested persons in rulemaking, it also is carefully circumscribed to assure that the Commission's ability to carry out its statutory mandate is not unduly impeded.[27] Under section 1.13(d)(6), in addition to showing the reasonableness and relevancy of a request, an individual must show that the requested information is "appropriate and required for a full and true disclosure" of the issues, and that it "is not available by voluntary methods and cannot be obtained through examination, including cross-examination, of oral presentations or the presentation of rebuttal submissions." [28]

The latter requirement reflects the fact that compulsory process is essential in those cases in which witnesses refuse to divulge voluntarily information that is necessary for a "full and true disclosure" of the disputed facts. *Without this tool, crucial information would be excluded from the proceedings, and an individual's right guaranteed under section 18 to cross-examine witnesses and offer rebuttal statements thus would have no substance.*

In upholding the Commission's authority to promulgate section 1.13(d)(6), we are also guided by the principle that permits an agency discretion to adopt procedures beyond the minima explicitly prescribed by statute. An agency has considerable "breathing room" to choose the procedures it will use to discharge its statutory responsibilities.[29] As the Supreme Court has ob-

---

**26.** *See, e. g.,* Magnuson-Moss Warranty—Federal Trade Commission Improvement Act, Pub.L. No. 93–637, § 202(c)(1)(B), 88 Stat. 2183, 2194 (1975) (adding Federal Trade Commission Act § 18(c)(1)(B)) (codified at 15 U.S.C. § 57a(c)(1)(B) (1976)).

**27.** Section 202(a)(h)(2), (d) of the Magnuson-Moss Act directs the Commission and the Administrative Conference of the United States to conduct a study and evaluation of the rulemaking procedures under section 18 of the Federal Trade Commission Act and submit a report to Congress of their findings. *See* Magnuson-Moss Warranty—Federal Trade Commission Improvement Act, Pub.L. No. 93–637, § 202(a)(h)(2), (d), 88 Stat. 2183, 2198 (1975). On 7–8 June 1979 the Administrative Conference accordingly adopted its recommendations. *See* Administrative Conference of the United States, Report to the Congress of the United States Pursuant to Section 202(d) of Public Law 93–637 (As Amended by P.L. 95–558), Recommendation 79–1: Hybrid Rulemaking Procedures of the Federal Trade Commission. Recommendation 79–1 states that the Commission in general should confine its use of subpoenas to the investigative stages conducted by the agency's staff prior to the initiation of the agency's rulemaking proceedings, and that subpoenas should be used only sparingly once the agency's rulemaking has begun. *See id.* at 14.

The majority opinion should not be construed as sanctioning a more liberal use of subpoenas in rulemaking. Under the circumstances of this case, the presiding officer was justified in administering the subpoenas on behalf of the Center because the requirements of section 1.13(d)(6) were satisfied. Those requirements, we believe, are sufficiently stringent to prevent an excessive utilization of third-party subpoenas in section 18 proceedings.

**28.** 16 C.F.R. § 1.13(d)(6) (1979).

**29.** *E. g., Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 524, 543–46, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978); *United States v. Florida E. Coast Ry.,* 410 U.S. 224, 236 n. 6, 93 S.Ct. 810, 35 L.Ed.2d 223 (1973); *Association of Nat'l Advertisers, Inc. v. FTC,* Nos. 79–1030, 79–1031, 79–1032, 79–1033, slip op. at 29–30 (D.C.Cir. 2 Oct. 1979) (Wright, C. J., concurring); *City of Chicago v. FPC,* 147 U.S.App.D.C. 312, 325–36, 458 F.2d 731, 743–44 (D.C.Cir.1971), *cert. denied,* 405 U.S. 1074, 92 S.Ct. 1495, 31 L.Ed.2d 808 (1972).

We are also mindful of our duty to accord "great deference" to an agency's interpretation of its statute, *e. g., Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965), especially when the construction of a new statute by the implementing agency is at issue. *E. g., id.; Power Reactor Dev. Co. v. International Union of Electricians,* 367 U.S. 396, 408, 81 S.Ct. 1529, 6 L.Ed.2d 924 (1961). Appellants contend that according deference to the agency's interpretation in this case would lead to

served: "[T]he formulation of procedures [is] basically to be left within the discretion of the agencies to which Congress [has] confided the responsibility for substantive judgments."[30] And in a later passage from the same case: "Absent constitutional constraints or extremely compelling circumstances 'the administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties.' "[31]

## B. *Adjudication versus Rulemaking*

Even conceding the Commission's authority to "fashion [its] own rules of procedure," appellants maintain that an administrative law judge rather than the presiding officer specified in section 1.13(d)(6) was required to issue the third-party subpoenas. Appellants' assertion is grounded on the notion that the use of the subpoena power transforms the agency's rulemaking into an adjudication, thus triggering the separation of functions provision under section 5(d)(2) of the Administrative Procedure Act.[32] Section 5(d)(2) provides that an agency employee who makes the recommended or initial decision may not be "responsible to or subject to the supervision or direction of an employee or agent engaged in the performance of investigative or prosecuting functions for an agency."[33] The presiding officer who administered the subpoenas in question was an employee for the Bureau of Consumer Protection, a bureau "engaged in the performance of investigative or prosecuting functions" for the Commission.[34] We find, however, that the proceeding before the Commission is rulemaking, and thus section 5(d)(2) of the Administrative Procedure Act is not applicable.

Section 202 of the Magnuson-Moss Act incorporates a wholly new type of proceeding—a hybrid between conventional, informal rulemaking and adjudication.[35] Section 202 goes beyond the traditional notice and comment provisions of informal rulemaking to encompass quasi-adjudicatory procedures such as the limited opportunity to cross-examine witnesses and offer rebuttal statements. The drafters of the Magnuson-Moss Act, however, were quite explicit that the inclusion of these new procedural safeguards had "not turned rulemaking proceedings into adjudicatory proceedings."[36] Section 202(b) expressly directs the Commission to proceed without reference to

the anomalous result of invalidating § 1.13(d)(6) because the Secretary of the Commission originally opposed the importation of trial-type devices into rulemaking proceedings. *See* Letter from Charles A. Tobin, Secretary of the Federal Trade Commission to Harley O. Staggers, Chairman, House of Representatives Comm. on Interstate and Foreign Commerce (29 Apr. 1974), H.R.Rep.No.1107, 93d Cong., 2d Sess. 56, *reprinted in* [1974] U.S.Code Cong. & Admin.News, p. 7735. The Commission's initial opposition to the proposed provisions, however, has no bearing on its interpretation of its mandate after passage of the Magnuson-Moss Act.

**30.** *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 524, 98 S.Ct. 1197, 1202, 55 L.Ed.2d 460 (1978).

**31.** *Id.* at 543, 98 S.Ct. at 1211 (quoting *FCC v. Schreiber,* 381 U.S. 279, 290, 85 S.Ct. 1459, 14 L.Ed.2d 383 (1965)).

**32.** Administrative Procedure Act § 5(d)(2), 5 U.S.C. § 554(d)(2) (1976).

**33.** *Id.*

**34.** Subsequent to the initiation of the mobile home proceeding, the Commission transferred its presiding officers to the Office of General Counsel of the Commission. *See* 43 Fed.Reg. 39,083, 39,084 (1978) (codified in 16 C.F.R. § 1.13(c) (1979)). That action, of course, has no bearing on the issue before the court.

**35.** *Compare* Magnuson-Moss Warranty—Federal Trade Commission Improvement Act, Pub.L. No. 93–637, § 202, 88 Stat. 2183, 2193 (1975) (adding Federal Trade Commission Act § 18) (codified at 15 U.S.C. § 57a (1976)) *with* 5 U.S.C. § 553 (1976) *and* 5 U.S.C. §§ 554, 556 (1976).

**36.** 120 Cong.Rec. 41,405, 41,407 (1974) (House Conference Report on S. 356, Consumer Product Warranty and Federal Trade Commission Improvement Act) (remarks of Rep. Broyhill).

those provisions of the Administrative Procedure Act that are applicable to adjudicatory proceedings, including the separation of functions provisions set forth in section 5(d)(2) of the Administrative Procedure Act.[37] Viewed in light of that background, the issue as framed by the appellants in essence is whether the "[a]vailability of third-party subpoenas . . . remove[s] the last significant difference between the FTC's rulemaking and full-blown adjudicatory rulemaking."[38] We hold that it does not.

In *United States v. Florida East Coast Railway*,[39] the Supreme Court set forth the basic distinction between adjudication and rulemaking. Referring to several earlier cases, the Court observed: "While the line dividing them [adjudication and rulemaking] may not always be a bright one, these decisions represent a recognized distinction in administrative law between proceedings for the purpose of promulgating policy-type rules or standards, on the one hand, and proceedings designed to adjudicate disputed facts in particular cases on the other."[40] *Thus the focus is not on whether the particular proceeding involves trial-type devices but instead turns on the nature of the decision to be reached in the proceeding.*[41] Rulemaking is prospective in scope and non-accusatory in form, directed to the implementation of general policy concerns into legal standards.[42] Adjudication, on the other hand, is "individual in impact and condemnatory in purpose,"[43] directed to the determination of the legal status of particular persons or practices through the application of preexisting legal standards.[44]

Under those guidelines, the proceeding before the Commission is rulemaking. Its purpose is to translate general policy considerations into prospective regulations governing mobile home sales and warranty services of the mobile home industry. Facts pertaining to the practices of individual mobile home manufacturers necessarily must be elicited in the proceeding to enable the Commission to obtain sufficient data to make a reasonable policy determination. The proposed regulation, however, rather than focusing on the acts or practices of any particular mobile home manufacturer specifies only the class of persons or practices that will fall within its scope (e. g., "[t]hose mobile home warrantors who fail to establish and maintain regular and effective warranty performance systems designed to assure that each consumer of a mobile home that is warranted will receive full performance of warranty service and repairs within a reasonable period of

37. "When prescribing a rule under subsection (a)(1)(B) of this section, the Commission shall proceed in accordance with section 553 of title 5 . . . (without regard to any reference in such section to sections 556 and 557 of such title) . . . ." Magnuson-Moss Warranty— Federal Trade Commission Improvement Act, Pub.L. No. 93–637, § 202(b), 88 Stat. 2183, 2193 (1975) (adding Federal Trade Commission Act § 18(b)) (codified at 15 U.S.C. § 57a(b) (1976)).

Section 554(d)(2), title 5 applies to an "employee who presides at the reception of evidence pursuant to section 556 [of title 5]." 5 U.S.C. § 554(d) (1976).

38. Reply Brief for Appellants at 13.

39. 410 U.S. 224, 93 S.Ct. 810, 35 L.Ed.2d 223 (1973).

40. *Id.* at 245, 93 S.Ct. at 821.

41. *See, e. g., Association of Nat'l Advertisers, Inc. v. FTC*, Nos. 79–1030, 79–1031, 79–1032, 79–1033, slip op. at 6–7 (D.C.Cir. 2 Oct. 1979); *Hercules, Inc. v. EPA*, 194 U.S.App.D.C. 172, 199–200, 598 F.2d 91, 118–19 (D.C.Cir.1978);

*International Harvester Co. v. Ruckelshaus*, 155 U.S.App.D.C. 411, 426, 478 F.2d 615, 630 (D.C.Cir.1973); *American Airlines, Inc. v. CAB*, 123 U.S.App.D.C. 310, 316–17, 359 F.2d 624, 630–31 (D.C.Cir.) (en banc), *cert. denied*, 385 U.S. 843, 87 S.Ct. 73, 17 L.Ed.2d 75 (1966); Pedersen, *The Decline of Separation of Functions in Regulatory Agencies*, 64 Va.L.Rev. 991, 1011–16 (1978).

42. *See, e. g., Association of Nat'l Advertisers, Inc. v. FTC*, Nos. 79–1030, 79–1031, 79–1032, 79–1033, slip op. at 6–7 (D.C.Cir. 2 Oct. 1979); *Hercules, Inc. v. EPA*, 194 U.S.App.D.C. 172, 199–200, 598 F.2d 91, 118–19 (D.C.Cir.1978).

43. *American Airlines, Inc. v. CAB*, 123 U.S. App.D.C. 310, 317, 359 F.2d 624, 631 (D.C.Cir.) (en banc), *cert. denied*, 385 U.S. 843, 87 S.Ct. 73, 17 L.Ed.2d 75 (1966).

44. *See, e. g., Association of Nat'l Advertisers, Inc. v. FTC*, Nos. 79–1030, 79–1031, 79–1032, 79–1033, slip op. at 6–7 (D.C.Cir. 2 Oct. 1979).

time" [45]). The proceeding thus is designed to do no more than fulfill the Commission's statutory responsibility of defining with specificity "unfair or deceptive acts or practices" in order adequately to guide future conduct.

### C. *Whether the Subpoenas Were Issued in Bad Faith*

 Having concluded that the Commission has the authority to issue third-party subpoenas in section 18 proceedings and that the mobile home proceeding before the Commission is indeed rulemaking, the only remaining question to be considered is appellants' claim that the presiding official issued the subpoenas at the request of the Center in bad faith.[46] Their claim is supported by two allegations: (1) that the presiding officer misled appellants into believing that no requests for subpoenas would be granted, and (2) that the presiding officer, after granting the Center's motion, arbitrarily denied appellants' requests for the issuance of subpoenas duces tecum to other witnesses seeking information of allegedly the same nature and relevancy as that subpoenaed from appellants. We reject the first allegation as baseless and decline to reach the merits of the second.

Appellants' first assertion depends on a colloquy that occurred between the presiding officer and counsel for one of the consumer groups interested in the rulemaking:

> [PRESIDING OFFICIAL]: Just to clarify, we have not insisted. Where we have gotten documents from witnesses, we have not insisted that the witness is at the hearing to get the documents.

> [COUNSEL]: All I would like to say, I don't want to prolong this, but we have an obligation to rebut whenever evidence we can [*sic*], and it seems to me that we have an obligation to rebut whatever evidence is submitted by the manufacturers and we would like to have any written documentation that reflect that kind of termination.

> [PRESIDING OFFICIAL]: We would also, and this is rule making again, I know you haven't been here, but I remind other counsel, it is not a trial and we try to get as much as we can voluntarily. Some of it we really don't want. We have too much paper, some we would like to have and haven't gotten. So, to that extent, we try to encourage the supplying of it. If they refuse at the hearing, we do not push them further. It has been the policy to do that. Indeed, I don't think at this juncture at the hearing, we have authority to do anything further.[47]

As a result of the statements quoted above, appellants maintain that the presiding officer was foreclosed from granting the Center's request for compulsory process.[48] We are unwilling to attach such a consequence to the presiding officer's remarks.

The exchange must be viewed in its proper context. The presiding officer's statement was not in response to a formal request for the production of documents accompanied by a statement of need required under section 1.13(d)(6), but was in response to an unembellished oral request for writ-

---

45. 40 Fed.Reg. 23,334, 23,338 (1975) (Mobile Home Sales and Service: Proposed Trade Regulation Rule), J.A. at 25, 25D.

46. On 10 January 1978 the Center filed its motion to compel the production of documents, including service requests, service records, and consumer complaints covering a specified time period, from fourteen mobile home manufacturers. *See* Motion of the Center for Auto Safety to Compel Production of Manufacturer Service Records, J.A. at 232. The presiding official granted the Center's request with modifications that substantially narrowed its scope on 2 March 1978. *See* Ruling Granting Request of Center for Auto Safety to Issue Compulsory Process, *id.* at 26.

47. *Id.* at 316–17. The Center's request for production of documents was granted approximately three weeks later.

48. Appellants also make much of the fact that this was the first instance in which a presiding officer issued subpoenas on behalf of third parties in Magnuson-Moss rulemaking. *See* Brief for Appellants at 13. While this may well have been the first exercise of a presiding officer's subpoena powers, the apparent authority to do so was already established with the adoption of § 1.13(d)(6) in August 1975.

ten documentation.[49] His remarks can in no sense be construed as a ruling that precluded interested persons from submitting properly documented requests for compulsory process at a later time in the hearing. We note moreover that appellants cannot claim prejudice arising from the official's remarks because they were on notice that compulsory process potentially was available in Magnuson-Moss rulemaking. As discussed earlier, section 1.13(d)(6) was published for public comment on 4 April 1975 [50] and went into effect on 13 August 1975.[51] The presiding officer thus remained free to consider and grant those requests that satisfied the criteria set forth in section 1.13(d)(6).

■ Appellants' second argument is based on the denial of their requests filed 10 March 1978 to compel the production of various documents from government agencies, consumer groups, and mobile home dealers who testified at the hearings.[52] The presiding officer denied these requests on the grounds that the motions were untimely and failed to satisfy the requirements of section 1.13(d)(6).[53] Appellants allege that the presiding officer's refusal to issue the subpoenas was arbitrary and discriminatory because the information requested was equally as relevant and necessary for a full airing of the facts as the information sought by appellee Center. We agree with the district court's finding that appellants' attack on the presiding officer's ruling was premature. Under the review provisions of section 18, appellants must await promulgation of a final trade regulation rule before the substance of their claim may be assessed.[54]

Appellants' challenge does not go to the merits of the presiding officer's action in issuing the subpoenas on behalf of appellee Center: appellants do not contest the official's findings that the Center's request as modified was reasonable in scope and relevant to the issues set for consideration and that it satisfied the additional requirements of section 1.13(d)(6). Instead the gist of appellants' concern is that they will be unable to rebut evidence adduced at the hearings without the information that they requested and that only a one-sided view of the facts will emerge as a result. This is exactly the type of challenge that falls within the coverage of section 18's judicial review provisions.

Under section 18, this court is authorized to set aside any trade regulation rule if that rule "is not supported by substantial evidence in the rulemaking record" or if the

---

**49.** Counsel prefaced his statement quoted in the text with only the following:

> [COUNSEL]: Not a recross, I have a request for production, if I may. In response to one of Mr. Meyer's questions, the witness said that the Housing Division of Chief Industries had terminated two dealers for faulty service. If there is any written record of that termination in the form of a letter or memorandum, or other writing, indicating why the termination was made, we would like that produced for the record.

J.A. at 315–16.

**50.** See 40 Fed.Reg. 15,237 (1975); note 11 *supra*.

**51.** See 40 Fed.Reg. 33,966 (1975); note 12 *supra* and accompanying text. Counsel for the manufacturers also attended a public meeting held by the Commission on 23 November 1977 at which the Commission reconfirmed the presiding officers' authority to issue subpoenas on behalf of third parties in Magnuson-Moss rulemaking. *See, e. g.,* Brief for Appellee Center for Auto Safety at 34.

**52.** The documents sought pertain to consumer experience with warranty services on mobile homes for the same time period as that covered by appellee Center's request for documents. *See* Motion to Compel Production of Dealer Records, J.A. at 241; Motion to Compel Production of Consumer Correspondence Records, *id.* at 256.

**53.** More specifically, the presiding officer found that the requests were not reasonable in scope, the records were not necessary to obtain a full and true disclosure of the disputed facts, and the appellants failed to show that the materials were not available by voluntary means. *See* Ruling Denying MHI [Manufactured Housing Institute] Motion to Compel Production of Dealer Records, *id.* at 386; Ruling Denying MHI Motion to Compel Production of Consumer Correspondence Records, *id.* at 396.

**54.** *See* Federal Trade Commission Act § 18(e)(3)(A), (B), 15 U.S.C. § 57a(e)(3)(A), (B) (1976).

Commission's ruling limiting an interested person's opportunity to cross-examine or offer rebuttal submissions "has precluded disclosure of disputed material facts . . . necessary for fair determination by the Commission of the rulemaking."[55] Thus section 18 evinces a congressional intent to stay judicial intervention in those circumstances until the agency proceeding has terminated. Because appellants are afforded an adequate remedy at that time, we find their claim presently to be unsuitable for judicial review.[56]

## III. CONCLUSION

In conclusion, the judgment of the district court is

*Affirmed.*

---

**55.** *Id.* "Rulemaking record" is defined as "the rule, its statement of basis and purpose, the transcript [of any oral presentation and cross-examination at the informal hearing], any written submissions, and any other information which the Commission considers relevant to such rule." 15 U.S.C. § 57a(e)(1)(B) (1976).

**56.** *See Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *Nader v. Volpe,* 151 U.S.App.D.C. 90, 94–100, 466 F.2d 261, 265–71 (D.C.Cir.1972).