## TOWN OF EAST HARTFORD et al., Petitioner-Appellant,

v.

## Patricia HARRIS et al., Respondent-Appellee.

No. 78-1575.

United States Court of Appeals, District of Columbia Circuit.

Argued June 12, 1979.

Decided Aug. 4, 1980.

F. Timothy McNamara, Hartford, Conn., with whom Stephen L. Bluestone, Washington, D. C., was on the brief, for appellant.

Meelie H. Nelson, Atty., Dept. of Justice, Washington, D. C., with whom Barbara Allen Babcock, Asst. Atty. Gen., Earl J. Silbert, U. S. Atty., and Leonard Schaitman, Atty., Dept. of Justice, Washington, D. C., were on the brief, for appellee.

Before ROBB and WILKEY, Circuit Judges and OBERDORFER,* United States District Judge for the District of Columbia.

127–129 (8th Cir.), *cert. denied,* 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975).

* Sitting by designation pursuant to 28 U.S.C. § 292(a) (1976).

Opinion for the Court filed by District Judge OBERDORFER.

This appeal requires us to determine whether the Department of Housing and Urban Development (HUD) complied with the requirements of the Housing and Community Development Act of 1974, 42 U.S.C. § 5301–5317 (1976) ("HDCA") in disapproving the application of the Town of East Hartford for a block grant. Section 5304(f) of Title 42 provides that an application for a block grant is "deemed approved" unless the Secretary informs the applicant of his disapproval within 75 days of receipt of the application.[1] East Hartford disputed the means by which HUD calculated the beginning and ending dates for the 75–day period, and sought declaratory and injunctive relief. The District Court entertained cross–motions for summary judgment. On April 21, 1978, Judge Sirica filed a memorandum and order denying the Town's motion and entering summary judgment for HUD. We affirm.

## I.

### A.

The facts, though complicated, are not in dispute. The Town of East Hartford made application for federal funds pursuant to Title I of the HDCA. The original application submission date was January 15, 1977. Pursuant to regulation, 24 C.F.R. § 570.-300(a)(3)(i),[2] the Area Director of HUD approved the Town's request for an extension of the submission date to April 16, 1977, a Saturday. If the submission date fell on a Saturday, it was the practice of HUD to treat an application as received for the purposes of section 5304(f) on the preceding Friday. Anticipating that HUD might require the full 75 days for review, and not wanting to lose a day at the outset of the period, the Area Director extended the submission date to April 18, 1977, the following Monday. As a courtesy to the Town, HUD agreed to accept the application on Friday, April 15. However, both parties agreed that the official submission date, and not the date of actual receipt, controls for the purposes of computing the statutory period. See Brief of Appellant at 15; Affidavit of Harry A. Reese, Appellee's Supplemental Appendix at 9.

For reasons not germane to this appeal, HUD determined after review that the Town's application could not be approved. The Deputy Assistant Secretary for Community Planning and Development communicated this decision and the reasons therefor in a telegram dispatched to the Mayor of East Hartford late in the afternoon of July 1. The telegram was hand–delivered to the mayor while he was cutting his lawn that weekend, on either Saturday, July 2, or Sunday, July 3. See Memorandum Opinion of Judge Sirica, Appellant's Appendix at A. 15. The District Court did not attempt to resolve the disputed fact about the precise date of the delivery.

### B.

Appellant does not contest the merits of the HUD decision to deny the Town's appli-

1. The statute, 42 U.S.C. § 5304(f) (1976), provides in pertinent part that:

   An application . . . shall be deemed approved within 75 days after receipt unless the Secretary informs the applicant of specific reasons for disapproval.

   42 U.S.C. § 5304(f). HUD interpreted this provision by regulation to provide that:

   Within seventy–five days of the date of receipt of the application, or at such earlier time as review is completed, the Secretary will notify the applicant in writing that the application has been either approved, or disapproved. In the event the Secretary has not mailed a notification to the applicant within seventy–five days from the date of acceptance of a complete application that it has been disapproved, the application shall be deemed to be approved. If the application is disapproved, the applicant shall be informed of the specific reasons for disapproval.

   24 C.F.R. § 570.306(c) (1977).

2. The regulation provides that:

   An applicant which was entitled to a grant under this part in the previous fiscal year, but did not apply for an entitlement grant or whose application was not approved in the previous fiscal year, must apply no later than January 15 unless an extension of this date has been requested by the applicant and an extension has been approved by HUD by January 15.

   24 C.F.R. § 570.300(a)(3)(i) (1977).

cation.[3] The focus of the dispute is on the mechanical timeliness of the notice under section 5304(f), which provides that an application is "deemed approved" unless the Secretary of HUD notifies an applicant of HUD's decision to disapprove an application within 75 days of receipt.

The Town advances two theories, under either of which the grant of summary judgment by the District Court would be improper: *first*, the Town maintains that the statute requires that notice be *received* by an applicant within 75 days of submission. The telegram was dispatched on July 1, 74 days following the April 18 submission date. A question of fact exists as to whether the mayor received the telegram on July 2 (the 75th day) or July 3 (the 76th day). If the date of receipt controls, the Town is entitled to a trial on the issue of when, in fact, the telegram was received. *Second*, the Town asserts that the Area Director was without authority to extend the date of submission to April 18 from April 16, in which event the dispatch of the telegram on July 1 (76 days from April 16th) was plainly outside the statutory time frame, regardless of whether the statute is satisfied by dispatch or receipt of a telegram.

## II.

### A.

We see no merit in appellant's argument that the Area Director was without authority to extend the date of submission from April 16 to April 18.[4] The statute and implementing regulations are clear that the Area Director was properly delegated au-

thority to extend the date. Section 3535(d) of Title 42 permits the Secretary to "delegate any of his functions, powers, and duties to such officers and employees as he may designate." Further, the provision permits the Secretary to authorize further redelegations of such functions "as he may deem desirable." 42 U.S.C. § 3535(d). Implementing regulations published at 40 Fed. Reg. 5385–86 (February 5, 1975) authorize HUD Regional and Area Staff, which includes the Area Director, to exercise the functions at issue here. Indeed, the Town's reliance on the April 16 submission date is premised on the extension from January 15 that was also granted by the Area Director. As the District Court noted, if the Area Director's authority was ineffective to change the submission date from April 16 to April 18, it was likewise ineffective to change the date from January 15 to April 16. Appellant's Appendix at A. 14. We agree with the District Court's conclusion that the statute and regulations authorized the Area Director to fix April 18 as the submission date.

### B.

Appellants also challenge the determination that HUD complied with the statute when it dispatched a telegram to the Town on July 1, the 74th day following submission.[5] The Town maintains that the statute requires that an applicant *receive* notice of HUD action within 75 days. HUD, by regulation, *see* 24 C.F.R. § 570.-306(c),[6] has interpreted the statute to require *dispatch* of *written* notice within 75 days.[7] Although dispositive in the peculiar

---

3. Appellant originally challenged the decision disapproving its application as substantively unsupported. The Town dropped this claim prior to the entry of summary judgment. *See* Memorandum Opinion of Judge Sirica, Appellant's Appendix at A. 8 n. 13.

4. The parties agree that the official submission date and not the actual date of receipt of an application controls for purposes of computing time under section 5304(f). The Town's dispute with HUD over the commencement of the statutory period is limited to whether the Area Director had authority to alter the submission date from April 16 to April 18.

5. This calculation, as well as the others noted herein, is predicated on a submission date of April 18. HUD procedures, which appellant does not contest, provide that the statutory period is computed from the day following the official submission date. *See* Affidavit of Harry A. Reese, Appellee's Supplemental Appendix at 9.

6. *See* note 2, *supra*.

7. The statute is silent on the means of notice. HUD, by regulation, requires that the applicant be "mailed" a written notice of disapproval. The Town challenged before the District Court

circumstances of this case, the differences in the parties' interpretations of the statutory requirements are not truly substantial. Both would achieve the objectives of the statute: forcing expeditious action by HUD and providing notice to the applicant. The practical differences are two: first, the regulation gives HUD the benefit of the full 75–day decision period; a rule requiring receipt of notice by the 75th day would require the agency to dispatch the notice at some indefinite time sooner, making the ultimate timeliness depend upon the distance between the HUD Area Director and the applicant, and the efficiency of mail service between those two points. Second, the regulation, by relying on the *dispatch* of notice, places the risk of an incomplete communication on the applicant, rather than on HUD.

Neither interpretation is implausible; both substantially comply with the apparent purposes of section 5304(f). Ultimately, the question is whether in promulgating the regulation HUD had a reasonable basis for allocating, as between itself and the applicant, the burden of delay (and risk) inherent in notification. Based on a review of the statute and its legislative history, we conclude that the HUD regulation reasonably and fairly implements section 5304(f).

## III.

### A.

The Housing and Community Development Act of 1974 (hereinafter the "Act") has its genesis in the House as H.R. 1536,

93d Cong., 2d Sess. (1974) and in the Senate as S. 3066, 93d Cong., 2d Sess. (1974). Both versions contain provisions that applications would be deemed approved if HUD failed to act within a specific period of time.[8] The House version, § 104(e), provided that:

> An application subject to section 104(b), if submitted after any date established by the Secretary for consideration of applications, shall be deemed approved within 60 days after receipt unless the Secretary informs the applicant of the specific reasons of disapproval. Subsequent to approval of the application, the amount of the grant may be adjusted in accordance with the provisions of this title.

The syntax of the House bill is confusing, since the obvious intent is not that the application shall be deemed approved within 60 days, but that the application shall be deemed approved "unless the Secretary informs the applicant of the specific reasons of disapproval" within 60 days. *See* H.Rep. No.93–1114, 93d Cong., 2d Sess. 49 (1974) (hereinafter "House Report"). In explaining the purpose of the application review provision generally, the House Report notes that the bill:

> establishes a review process which the Committee believes strikes a reasonable balance between the needs of communities for prompt processing of grant requests, on the one hand, and the need to assure that Federal funds will be used to achieve national objectives, on the other.

House Report, *supra*, at 8. Nothing in the Report or the House debate in passing the Bill, *see* 120 Cong.Rec. 6142–6217 (1974) ex-

---

HUD's resort to a telegram in view of the regulation's requirement of "mailed" notice. The Town has not raised this contention on appeal, and we see no reason to question HUD's interpretation of the regulation to permit the use of a telegram to satisfy the requirement of a "mailed" notice in writing. *See Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965).

**8.** The original version of this provision is found in H.R. 10036, 93d Cong., 1st Sess. § 112(e) (1973), which required the Secretary to act on grants no later than 60 days after the beginning of the fiscal year in which the grants are to be made. This bill contained no provisions for

notice, nor did it contain any penalty if the Secretary failed to act within the statutory period. The clean bill reported by the Subcommittee on Housing, H.R. 14490, 93d Cong., 2d Sess. § 112(e) (1974) contains provisions substantially similar to those in H.R. 15361. Specifically, H.R. 14490 provided that an application shall be "deemed approved unless, prior to thirty days after the beginning of the program period for which the grants are to be made, the Secretary informs the requesting city or county in writing of the specific reasons for disapproval." The Committee report contains no explanation of the changes from H.R. 10036 through H.R. 14490 to H.R. 15361.

plains what is meant by "informs" or whether the Secretary was intended to have the full 60 days in which to consider an application. The House version does not specify that the grantee is to be informed in writing, nor does it otherwise treat the manner of notification.

Significantly, although the Report notes the interest of the community in "prompt processing of grant requests," *id.*, nowhere does it acknowledge any corollary interest of the community in receiving prompt notification of HUD action. Nor does the date on which the community receives notice of HUD action control any further responsibilities of the communities under the Act, such as requesting a revision in the grant amount, appealing disapproval of a grant request, *etc.*

The Senate version of the bill, introduced as S. 3066, provided that:

> The Secretary shall make his determination with respect to any application and give written notice of his approval or disapproval within 90 days after submission of the application. Each application providing for continuation or revision of an ongoing community development program shall be deemed approved by the Secretary within 90 days after the submission, unless the Secretary notifies the applicant in writing of his disapproval of the application or any part thereof, setting forth the reasons therefor.

S. 3066, 93d Cong., 2d Sess. § 308(e)(1) (1974). The Senate Report suggests strongly that the Senate bill intended to give the Secretary the full 90 days in which to act on an application. In the section analysis, the report notes that section 308(e)(1):

> would require that the Secretary make his determination regarding any application and give written notice of his approval or disapproval within 90 days after submission unless the Secretary notifies the applicant in writing of his disapproval and sets forth the reasons with respect to performance by the applicant or the eligibility of proposed activities.

S.Rep.No.693, 93d Cong., 2d Sess. 135 (1974). However, it is possible to construe "and give written notice" to require that the notice be received by the grantee within the 90–day period.

The Senate passed S. 3066 on March 11, 1974; the House, after substituting the whole of H.R. 15361 for the text of S. 3066, passed S. 3066 on June 20, 1974. The Senate disagreed with the House amendments and the two versions of the bill went to conference. The compromise version of the bill contained the language of the original House bill, but extended the time period to 75 days. The House Report accompanying the conference report, H.Rep.No.1279, 93d Cong., 2d Sess. (1974), contains perhaps the clearest statement of the intent of the provision. Under a caption entitled "Time of HUD action" the report notes:

> The Senate bill required the HUD Secretary to act on applications for community development assistance within 90 days, and provided that applications for on–going programs would be deemed approved after 90 days unless HUD notified communities otherwise. The House amendment contained a similar provision, except that applications would be deemed approved after 60 days rather than 90 days. The conference report contains the House provision with an amendment specifying 75 days.

H.Rep.No.1279, *supra*, at 126, U.S.Code Cong. & Admin.News 1974, pp. 4273, 4452. The Report suggests three conclusions: first, that the Senate bill intended to give the Secretary the full 90 days to "act on" applications; second, that the House provision was "similar"; and, third, that the difference between the House and Senate bills was limited to the difference in the time period. At the very least, the Report suggests that the method and time within which the applicant must receive notice of the Secretary's action was not central to the drafters or revisers of the provision. Rather, the essential feature of both versions of the bill was its action–forcing aspect, with specific prescription of the limited time available to HUD to act.

The later House and Senate debates on the conference report are silent as to this

provision; the conference report version appears intact as section 5304 of the Act.

In sum, section 5304(f) seems principally directed at forcing action by HUD and shifting the burden of a substantial delay to the agency by deeming approved applications on which HUD delays its decision. Neither the mechanics of the statute nor the legislative history suggests that notification–as opposed to action–is significant. Indeed, the only reference to the form or means of notice–the Senate requirement of "written notice"–was deleted in the bill as passed.

### B.

In contesting the propriety of the HUD regulation, appellant relies substantially upon what it considers the plain meaning of the term "inform" in section 5304(f). The Town calls our attention to common dictionary [9] or treatise [10] definitions of the term "inform" as connoting a completed communication. Implicit in these definitions, and the cases employing them, are circumstances in which the act of communication is itself the essential event, and the knowledge gained thereby is the predicate for some other action by the person receiving notice. *See, e. g., Reeves v. American Optical*, 408 F.Supp. 297 (W.D.N.Y.1976); *Flanders v. Waterloo Community School District*, 217 N.W.2d 579 (Iowa 1974). Here, both the legislative history and the statutory scheme are clear that agency action is the significant event; the dispatch (or receipt) of official notice is principally a prophylactic measure to ensure that the decision is made on the record and to trigger the "approval" sanction of section 5304(f) if the agency fails to act. There is no reason to infer from the use of the term "inform" that Congress intended that the HUD must complete a communication within 75 days of submission.

We conclude that the more plausible construction contemplates a statute which gives HUD 75 days in which to act on an application. If the statute had required delivery of notice within 75 days, the time available for HUD to act would have been reduced by an indeterminate number of days which would necessarily include a substantial margin for errant delivery. We do not believe that Congress intended to inject this complication into the main HUD task of completing action within a defined time period.

### C.

■ In upholding the authority of HUD to promulgate 24 C.F.R. § 570.306(c), we are mindful of the principle of statutory construction that an agency is entitled to "great deference" in the interpretation of its statute, *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965), especially when the construction of a new statute by the implementing agency is at issue. *Power Reactor Development Co. v. International Union of Electricians*, 367 U.S. 396, 81 S.Ct. 1529, 6 L.Ed.2d 924 (1961); *F. T. C. v. Brigadier Industries Corporation*, 198 U.S.App.D.C. 377, 382 n. 29, 613 F.2d 1110, 1115 n. 29 (1979). The interpretation found in the HUD regulation is a reasonable–if not the only reasonable–interpretation of 42 U.S.C. § 5304(f). It does not alter the character or substance of the duties that Congress sought to impose on the agency, but simply resolves what may be regarded as at most an ambiguity in the manner by which the agency is to fulfill its responsibilities and eliminates a possible complication in the scheduling of its work. Although in this instance HUD has plainly resolved the ambiguity in its own favor, we find that this interpretation is reasonable, consistent with the statutory purpose, and

---

**9.** *See* Webster's Third International Dictionary (1961) (inform means "to give information or knowledge" or the "imparting of knowledge").

**10.** *See* 58 Am.Jur.2d, Notice § 22 (1971) ("Where a statute requires notice to be given, it is the general rule of law that actual personal notice is required"); 66 C.J.S. Notice § 18

(1950) ("where a statute directs that notice in writing shall be given but prescribes no method of service, ordinarily it is sufficient to show that the party to be notified actually received written notice, and that the method is unimportant").

**10**

fair to all potential applicants, including the appellant here.

Accordingly, the judgment of the District Court is

*Affirmed.*